{¶ 43} I respectfully dissent.
 {¶ 44} There have been divergent appellate rulings as to whether traffic signs must strictly versus substantially comply with the Ohio Manual on Uniform Traffic Control Devices. Statev. Millhouse (Feb. 3, 1995), 4th Dist. No. 94 CA 4, 1995 Ohio App. LEXIS 538, at *9 ("there is divergent authority on the issue of whether the placement and form of traffic control devices must strictly comply with OMUTCD requirements in order to be enforceable"). This court has adhered to the strict compliance standard. See Mentor v. Mills (July 22, 1988), 11th Dist. No. 12-269, 1988 Ohio App. LEXIS 2962, at *5-*6.
 {¶ 45} Applying a strict compliance standard, however, leads to the elevation of form over substance without meaningful benefit for motorists or pedestrians. The question is whether the traffic sign was sufficiently visible so as to provide the operator of a vehicle enough notice to comply with that sign.Strongsville v. Stoskopf, 8th Dist. No. 82259, 2003-Ohio-6887, at ¶ 24 ("R.C. 4511.12 states that the official sign need only be sufficiently legible to be seen by an ordinarily observant person"). In answering that question, some appellate courts have upheld traffic signage violations involving instances of substantial compliance with the OMUCTD. State v. Lechner (Feb. 13, 1980), 9th Dist. No. 9430, 1980 Ohio App. LEXIS 14185, at *5;Mansfield v. O'Donnell (Sept. 26, 1991), 5th Dist. No. CA-2826, 1991 Ohio App. LEXIS 4727, at *6.
 {¶ 46} In O'Donnell, the Fifth District Appellate District found that strict compliance was not mandated where the evidence established that the driver actually stopped at the stop sign and then failed to yield to ongoing traffic. The court stated that the issues to be addressed were: "Did the defendant see the signs; did he understand its meaning; and did he have sufficient time to respond." 1991 Ohio App. LEXIS 4727, at *4 (citation omitted).
 {¶ 47} In balancing public safety with the due process rights of drivers, the three-part test in Mansfield makes more sense than imposing strict compliance which, in the present case, results in drivers being allowed to disregard, with impunity, a clearly visible stop sign.
 {¶ 48} Applying that three-part test to the facts in the record in this case leads to the following conclusions:
 {¶ 49} 1) Appellant saw the stop sign at issue. Officer Svoboda testified that at first, appellant stated that he believed he stopped at the stop sign. Appellant subsequently told Officer Svoboda that he did not stop because the sign was illegally posted.
 {¶ 50} 2) Appellant understood the meaning of the stop sign. In addition to appellant stating that he believed he stopped, Officer Svoboda also testified that appellant's vehicle slowed to about 5-10 m.p.h. as it approached the stop sign.
 {¶ 51} 3) Appellant had sufficient time to respond. See (1) and (2) immediately above. Also, appellant has been previously cited for failing to stop at this sign.
 {¶ 52} The purpose of height requirements for stop signs is to provide drivers with a sufficient opportunity to see and comply with the sign. Appellant had such opportunity in this case and should not be allowed to ignore a stop sign because of a mere technicality that did not impede his ability to comply with that sign.
 {¶ 53} The decision of the Chardon Municipal Court should be affirmed.